1   JOHNSON & PHAM, LLP
2   Christopher D. Johnson, SBN: 222698
        E-mail: cjohnson@johnsonpham.com
3   Christopher Q. Pham, SBN: 206697
        E-mail: cpham@johnsonpham.com
4   Marcus F. Chaney, SBN: 245227
5       E-mail: mchaney@johnsonpham.com
6   Ani S. Garibyan, SBN: 274846
        E-mail: agaribyan@johnsonpham.com
7   6355 Topanga Canyon Boulevard, Suite 326
8   Woodland Hills, California 91367
    Telephone:  (818) 888-7540
9   Facsimile:   (818) 888-7544

10
    Attorneys for Plaintiff
11  OTTER PRODUCTS, LLC

12
                  **UNITED STATES DISTRICT COURT**
13
14                **CENTRAL DISTRICT OF CALIFORNIA**

15  OTTER PRODUCTS, LLC, a Colorado        Case No.: CV12-04206 ODW (MANx)
16  Limited Liability Company,

17                                         **PLAINTIFF OTTER PRODUCTS,**
                    Plaintiff,             **LLC'S NOTICE OF MOTION AND**
18                                         **MOTION FOR DEFAULT**
            v.                             **JUDGMENT AGAINST**
19                                         **DEFENDANTS MPL DEALS, INC.**
20  MPL DEALS, INC., a New York            **AND MENACHEM PRUS**
    Corporation; MENACHEM PRUS, an
21  Individual; and DOES 1-10, Inclusive,  **[Filed Concurrently With**
22                                         **Declaration of Ani S. Garibyan in**
                    Defendants.            **Support of Plaintiff s Notice of**
23                                         **Motion and Motion for Default**
24                                         **Judgment Against Defendants MPL**
                                           **Deals, Inc. and Menachem Prus;**
25                                         **[Proposed] Judgment]**
26
27                                         **Date:**    Monday, October 29, 2012
                                           **Time:**    1:30 p.m.
28                                         **Courtroom:**  11

1

2     TO DEFENDANT AND THE HONORABLE COURT:

3         Please take notice that on Monday, October 29, 2012, at 1:30 p.m., or soon

4     thereafter as this matter may be heard in Courtroom 11 of the above-entitled

5     Court, located at 312 N. Spring St., Los Angeles, CA 90012, Plaintiff OTTER

6     PRODUCTS, LLC (hereinafter "Plaintiff") will present its motion for entry of

7     default judgment against Defendants MPL DEALS, INC. and MENACHEM

8     PRUS (hereinafter "Defendants"), for damages and injunctive relief.   This

9     application is made pursuant to Rule 55(b) of the *Federal Rules of Civil*

10    *Procedure* ("*Fed.R.Civ.P.*") which provides for a court ordered default judgment

11    following entry of default by the court clerk under *Fed.R.Civ.P.* 55(a), and

12    pursuant to 15 *United States Code* ("*U.S.C.*") §§1114, 1125(a) and (c).

13        This application is based upon this Notice of Motion for Entry of Default

14    Judgment by Court, the attached Memorandum of Points and Authorities, and the

15    Declaration of Ani S. Garibyan filed concurrently herewith, the papers and

16    records on file herein, and upon such oral and documentary evidence as may be

17    presented at the hearing of this matter.

18

19    DATED: September 20, 2012

                                          JOHNSON & PHAM, LLP

20

21

22                                        By:

23                                            Ani S. Garibyan, Esq.
                                              Attorney for Plaintiff
24                                            OTTER PRODUCTS, LLC

25

26

27

28

# TABLE OF CONTENTS

                                                                                        Page

I.     FACTUAL BACKGROUND ………………...…………………………… 3

II.    LEGAL STANDARD………………………………………………..…..… 7

III.   ANALYSIS OF *EITEL* FACTORS……………………...…………...…....7

       A.   Possibility of Prejudice to Plaintiff…..…..……………………….7

       B.   Plaintiff's Substantive Claims are Meritorious in the Well Pled
            Complaint….…………………………………………………..….8

            1.   Trademark Infringement Claim……………………..…..8

                 (a)   Plaintiff's ownership of trademarks at issue…………........9

                 (b)   Defendant's use of Plaintiff's trademarks in
                       commerce…………………………………………...…..9

                 (c)   Likelihood of confusion…………………………10

                       (i)     Strength of the allegedly infringed mark…........ 10

                       (ii)    Proximity or relatedness of goods……………12

                       (iii)   Similarity of sight, sound, and meaning of
                               marks……………………………………….....12

                       (iv)    Degree to which marketing channels converge...12

                       (v)     Type of goods and degree of care consumers are
                               likely to exercise in purchasing goods……......13

                       (vi)    Intent of the Defendant in selecting the allegedly
                               infringing mark………………………………....13

                       (vii)   Evidence of actual confusion and likelihood that
                               the parties will expand their product line……….15

                       (viii)  Conclusion……………………………………15

            2.   Trademark Dilution Claim……………………...…………16

                 (a)   Plaintiff's ownership of famous marks……………........16

                 (b)   Defendant's commercial use of Plaintiff's famous

i

marks.................................................................17

        (c)    Defendant's use began after Plaintiff's marks were

              famous...........................................................18

        (d)    Defendant's use tarnishes the quality of Plaintiff's marks

              .......................................................................18

   C.    <u>Sum of Money at Stake</u>.............................................19

       1.    **Statutory Damages for Trademark Infringement and**

             **Trademark Dilution**............................................19

   D.    <u>No Possiblity of Dispute Concerning Material</u>

       <u>Facts</u>...........................................................20

   E.    <u>Default Not Due to Excusable Neglect</u>...........................20

   F.    <u>Policy Favoring Decisions on the Merits Does Not Outweigh</u>

       <u>Plaintiff's Right to Relief</u>......................................21

IV.    **REMEDIES**.......................................................21

  A.    <u>Statutory Damages</u>..............................................22

  B.    <u>Costs</u>..............................................................24

  C.    <u>Attorneys' Fees</u>................................................24

  D.    <u>Injunctive Relief</u>..............................................24

V.    **CONCLUSION**.................................................26

# <u>TABLE OF AUTHORITIES</u>

**CASES:**

Adobe Systems Inc. v. Brooks,

3 2009 WL 593343 (N.D. 2009) ............................................................. 23

Adobe Sys. Inc. v. Childers, No.

2011 WL 566812 (N.D. Cal., Feb. 14, 2011)........................................... 8

AMF Inc. v. Sleekcraft Boats,

599 F.2d, 349 (9th Cir. 1979) .......................................... 10, 12, 13, 14, 15

Brookfield Communications, Inc. v. West Coast Entertainment Corp.,

174 F.3d 1047(9th Cir. 1999)................................................................. 8, 9

Columbia Pictures Television, Inc. v. Krypton Broadcasting of Birmingham, Inc.,

F.3d 1186, 1194 (9th Cir. 2001) ............................................................ 22

Dollar Tree Stores Inc. v. Toyama Partners LLC,

2011 WL 872724, at *1 (N.D. Cal. Mar. 11, 2011) ................................ 8

Drexel Enterprises, Inc. v. Hermitage Cabinet Shop, Inc.,

266 F.Supp. 532 (N.D. Cal. 1967) ........................................................ 15

E & J Gallo Winery v. Gallo Cattle,

967 F.2d, 1290 (9th Cir. 1992)............................................................... 10

G.D. Searle & Co. v. Chas. Pfizer & Co.,

265 F.2d at 389........................................................................................ 15

Joujou Designs, Inc. v. Jojo Ligne Internationale,

821 F.Supp. 1354 (N.D.Cal.1992) ........................................................ 12

Lindy Pen Co. v. Bic Pen Corp.,

982 F. 2d 1409 (9th Cir. 1993) .............................................................. 24

M2 Software, Inc. v. Madacy Entertainment Corp.,

421 F.3d, 1080 (9th Cir.2005) ................................................................. 9

Mead Data Central, Inc. v. Toyota Motor Sales, U.S.A., Inc.,

875 F.2d 1026 (2nd Cir.1989). .............................................................. 16

1  Omega Importing Corp. v. Petri-Kine Camera Co.,
2  451 F. 2d 1190 (9th Cir. 1971) ........................................................ 13
3  Panavision, Int'l v. Torppen,
4  141 F.3d 1324 (9th Cir.1998) ......................................................... 16
5  Peer Int'l Corp. v. Pausa Records Inc.,
6  909 F. 2d 1332 n.3 (9h Cir. 1990) ................................................... 22
7  PepsiCo Inc. v. Cal. Sec. Cans,
8  238 F.Supp.2d 1172 (C.D. Cal. 2002) ....................................... 14, 24
9  Philip Morris USA, Inc. v. Castworld Products, Inc.,
10  219 F.R.D. 500 (C.D. Cal 2003) ............................................ 14,21,22
11  Philip Morris v. Shalabi,
12  352 F.Supp.2d. 1072 (C.D.Cal.2004) .............................................. 8,9
13  Plough, Inc v. Kreis Laboratories,
14  314 F.2d 635 (9th Cir. 1963) .......................................................... 15
15  Taylor Made Golf Co., Inc., v. Carsten Sports Ltd.,
16  175 F.R.D. 658  ................................................................................ 24
17  TeleVideo Systems, Inc. v. Heidenthal,
18  826 F.2d 918 (9th Cir. 1987) .......................................................... 14
19  Toys "R" Us v. Akkaoui,
20  40 U.S.P.Q. 2d (BNA) 1836 (N.D. Cal. 1996) ...................... 16, 18,19
21
22  **STATUTES:**
23  Fed.  R. Civ. P. 54(c) ....................................................................... 21
24  Fed.  R. Civ. P. 55 ............................................................................. 6
25  Fed.  R. Civ. P. 55(b)(2) .............................................................. 21,23
26  15 U.S.C. §1114(1) ........................................................................... 9
27  15 U.S.C. §1114(1)(a) ...................................................................... 24
28  15 U.S.C. §1116(a) ........................................................................... 24

15 U.S.C. §1117(a) ............................................................. 24

15 U.S.C. §1117(b) ............................................................. 24

15 U.S.C. §1117(c) ............................................................. 22

15 U.S.C. §1117(c)(1) ..................................................... 19, 20

15 U.S.C. §1117(c)(2) ..................................................... 19, 20

15 U.S.C. §1117(e)............................................................. 24

15 U.S.C. §1125(a) ...........................................................8,24

15 U.S.C. §1125(c) .....................................................16,19,24

*Lanham Act §43(a)* ............................................................. 8

*Lanham Act §43(c)* ........................................................... 19

*California Business & Professions Code §17200*..............................8

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

### I.      FACTUAL BACKGROUND

Plaintiff OTTER PRODUCTS, LLC (hereinafter "Plaintiff"), founded in 1998, is known as an innovator of protective solutions for the leading global handheld manufacturers, wireless carriers and distributors. Plaintiff is a leading retailer of and distributor of high-quality protective cases, peripherals and accessories for portable electronic devices and computers. *See* Complaint ("Compl.") at ¶¶12-13.  Plaintiff develops and manufactures protective carrying cases including but not limited to the following products such as the Apple iPhone®, Apple iPad®, and Apple iPod Touch®; Smartphones including Blackberry®, HTC®, Nokia®, Samsung®, LG® and Motorola® models; Personal Computer Laptops including Dell®; Tablet Cases for the Amazon Kindle®, eReader®, Palm® cases, and Sony® cases. Compl. at ¶14.

Plaintiff's OTTERBOX®-branded products have achieved an extraordinary reputation and have garnered extensive coverage by the media in reports about consumer electronics products. Compl. at ¶16. Plaintiff was selected as "The Best Mobile Case Brand" 2011 from About.com Reader's Choice; "Must Have gear for the fall and winter" by *National Geographic* "Gear of the Year" 2010 for Plaintiff's Defender® Series of products; 2010 Favorite Protective iPhone/iPad Case by TiPB Reader's Choice Award; TESSCO Technologies, Inc. Innovator Award – Top Honor for leading manufacturers in the mobile devices and accessories markets; Better Business Bureau "Torch Award for Business Ethics" – Plaintiff was recognized for outstanding commitment to practices that benefit their customers, suppliers, shareholders, employees and the surrounding community, honored in April 2010; 2009 *iProng Magazine* "iProng 50" top 50 iPhone and iPod accessories showcasing Plaintiff's Armor® Series of products for iPod and Defender® Series for iPhone 3G and iPhone 3GS. Compl. at ¶17.

/ / /

Plaintiff's substantial investment of time, money, and effort in developing consumer recognition and awareness of its OTTERBOX®-branded products has garnered extensive media coverage in reports about consumer electronic products. Compl. at ¶18. Plaintiff has spent an enormous amount of money on print and internet advertising in order to inform consumers of the benefits of Plaintiff's products. Through the extensive use of the Plaintiff's marks, Plaintiff has built up and developed significant goodwill in its entire product line. Compl. at ¶18.

Plaintiff owns six trademarks for its OTTERBOX®- and DEFENDER SERIES®-branded products and product packaging. Compl. at ¶19-21, Exhibits ("Ex.") A-F, thereto. Specifically applicable to this matter are the following four (4) trademarks registered with the United State Patent and Trademark Office: U.S. Reg. Nos. 2287619, 3788535, 3788534, and 3623789 (collectively hereinafter, "Plaintiff's Trademarks"). See Declaration of Ani S. Garibyan (hereinafter "Garibyan Decl.") ¶2, Exs. A-D, thereto.

In light of the success of Plaintiff's products, as well as the outstanding reputation they have gained, Plaintiff and its products have become targets for unscrupulous individuals and entities who wish to take a "free ride" on the goodwill, reputation and fame Plaintiff has spent considerable effort and resources to build up their products and marks.

Beginning on a date currently unknown to Plaintiff and continuing to the present, Defendants MPL DEALS, INC. and MENACHEM PRUS (hereinafter "Defendants") have offered for sale and sold in the United States (including this judicial district) goods that were neither made or consented by Plaintiff (such goods hereinafter referred to as "Counterfeit Goods"). Compl. at ¶25. Defendants operate and maintain a storefront on the website known as www.ebay.com (hereinafter "eBay") under the seller ID "mpdeals1." Compl. at ¶25; Garibyan Decl., ¶6, Ex. F thereto. Through this eBay storefront, Defendants regularly and systematically advertised, marketed, distributed, and sold products bearing the

following unauthorized trademarks: U.S. Reg. Nos. 2287619, 3788535, 3788534, and 3623789. Garibyan Decl., ¶¶2, 6, Exs. A-D, F, thereto.  As of September 19, 2012, Defendants' storefront on eBay showed no less than 15 neutral and 3 negative feedbacks from various purchasers of Defendants' products, referencing unauthorized and/or counterfeit OTTERBOX® products sold by Defendants bearing Plaintiff's Trademarks. Garibyan Decl., ¶7, Exs. G-H, thereto.  By way of example, on May 1, 2012, Defendants received feedback from eBay Buyer "sbate24" who purchased a "NEW OTTERBOX DEFENDER CASE IPHONE 3 3GS BLACK & YELLOW" from Defendants for a cost of $13.84 (Item Number 140596244895). This specific buyer complained that he was "Not convinced that it's a real otterbox…". This buyer was obviously confused by Defendants' false and misleading advertising when they purchased and received counterfeit goods bearing Plaintiff's trademarks, when in fact they believed to be purchasing authentic products manufactured by Plaintiff.

Moreover, according to Plaintiff's eBay specific monitoring software, Terapeak.com, which caches and tracks online commercial transactions and listing by product and seller ID, Defendants have sold no less than 11,115 counterfeit and/or unauthorized products bearing Plaintiff's Trademarks from May 2011 through May 2012 taking in total gross receipts of approximately $206,510.00. Garibyan Decl. ¶8, Exs. I-L, thereto. Additionally, through Defendants' substantial ecommerce business activities, Defendants have derived immense economic benefit from intrastate commerce expressly targeting foreseeable purchasers in California and foreseeable purchasers of Plaintiff's OTTERBOX®-branded products. Compl. at ¶26.

On March 27, 2012, in its ongoing investigation of counterfeit sales of OTTERBOX®-branded products, Plaintiff purchased a "NEW OTTERBOX DEFENDER CASE FOR APPLE IPHONE 4 4G PINK/WHITE" (Item #140713678582) from Defendants for $24.48, paid through Plaintiff's PayPal

electronic payment account. Compl. at ¶27; Garibyan Decl., ¶9, Ex. M, thereto. Plaintiff's PayPal purchase receipt for Item #2140713678582 clearly show Defendants' name and eBay.com seller ID "mpdeals1" as the seller.   Garibyan Decl., ¶9, Ex. D thereto. The "NEW OTTERBOX DEFENDER CASE FOR APPLE IPHONE 4 4G PINK/WHITE" (Item #140713678582) purchased from Defendants arrived via USPS First Class Mail with the shipping label identifying PRUS on the return address. Garibyan Decl. ¶10, Ex. N, thereto.

The product described as "NEW OTTERBOX DEFENDER CASE FOR APPLE IPHONE 4 4G PINK/WHITE" (Item #140713678582) purchased from Defendants clearly displayed marks identical to Plaintiff's OTTERBOX® and DEFENDER SERIES® marks. Garibyan Decl., ¶11, Ex. O, thereto. The product purchased from Defendants was inspected for authenticity by Plaintiff. Compl. at ¶28; Garibyan Decl. ¶12.   Plaintiff's inspection, using security measures, confirmed the item Defendants sold to Plaintiff was in fact a counterfeit "NEW OTTERBOX DEFENDER CASE FOR APPLE IPHONE 4 4G PINK/WHITE." Compl. at ¶28; Garibyan Decl. ¶12.

Plaintiff filed its Complaint against Defendants on May 14, 2012, and Defendants were served, with a copy of the Summons and Complaint on May 24, 2012, as evidenced by the Proofs of Service filed with the Court on June 5, 2012 (Documents #8-9). Garibyan Decl., ¶14.   On June 8, 2012, Plaintiff and Defendants filed a Stipulation Extending the Time to Answer the Complaint, and the Court granted the Stipulation and extended Defendants' deadline to respond to the Complaint to July 16, 2012 (Documents #10-11). Garibyan Decl., ¶15.

Pursuant to Rule 55 of the *Federal Rules of Civil Procedure* ("*Fed.R.Civ.P.*"), a party seeking default judgment must first have the clerk enter the default. *Fed.R.Civ.P.* 55(a).   Plaintiff requested entry of default against Defendants on September 11, 2012, and the clerk entered default of said Defendants on September 12, 2012 (Documents #12-13). Garibyan Decl., ¶16.

## II.   LEGAL STANDARD

Sufficient grounds exist for the entry of a default judgment against the Defendants.  The Ninth Circuit has enumerated several factors the Court should consider in deciding whether to grant default judgment: (A) the possibility of prejudice to the plaintiff; (B) the merits of plaintiff's substantive claim; (C) the sufficiency of the complaint; (D) the sum of money at stake in the action; (E) the possibility of a dispute concerning material facts; (F) whether the default was due to excusable neglect; and (G) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. Eitel v. McCool, 782 F.2d 1470, 1471-1472 (9th Cir.1986).  In considering the above factors, the Court takes all factual allegations in the Complaint as true, except for those relating to damages. TeleVideo Systems, Inc. v. Heidenthal, 826 F.2d 915, 917-918 (9th Cir.1987).

## III.   ANALYSIS OF *EITEL* FACTORS

Application of the facts in this matter to the *Eitel* factors warrant entry of a default judgment in favor of Plaintiff.

### A.   Possibility of Prejudice to Plaintiff

In light of the fact that the only Defendants in this case have failed to appear, absent a default judgment, Plaintiff will not be compensated for its losses and will accordingly be prejudiced.  Moreover, if this Court fails to enter a default judgment against Defendants, in light of Defendants' failure to defend this action, it will set a devastating precedent allowing infringers to avoid liability by effectively not responding to Plaintiff's claims. This in turn will further prejudice Plaintiff's ability to enforce its intellectual property rights.  Furthermore, in the absence of injunctive relief, Plaintiff will continue to suffer harm from Defendants' violation of its trademark and copyright rights.

Accordingly, this first *Eitel* factor, the possibility of prejudice to the plaintiff, weighs in favor of granting default judgment.

/ / /

**B.**   **Plaintiff's Substantive Claims are Meritorious in the Well-Pled Complaint**

The second and third *Eitel* factors, concerning the merits of Plaintiff's substantive claims and the sufficiency of its Complaint, also weigh in favor of granting a default judgment in favor of Plaintiff against Defendants.  Plaintiff has alleged six (6) causes of action in its Complaint against Defendants, to wit: (1) FEDERAL TRADEMARK INFRINGEMENT [15 U.S.C. §1114/*Lanham Act* §43(a)]; (2) FALSE DESIGNATION OF ORIGIN/UNFAIR COMPETITION/ FALSE OR MISLEADING ADVERTISING [15 U.S.C. §1125(a)]; (3) TRADEMARK DILUTION [15 U.S.C. §1125(c)]; (4) UNFAIR BUSINESS PRACTICES [CALIFORNIA *BUSINESS & PROFESSIONS·CODE* §17200]; (5) UNJUST ENRICHMENT; and (6) DECLARATORY RELIEF.

Moreover, Plaintiff's claims against PRUS, individually, arise under an alter ego theory.  PRUS is the sole officer, director, and/or shareholder of MPL, and thus is liable for its actions. See <u>Dollar Tree Stores Inc. v. Toyama Partners LLC</u>, No. 10-0325, 2011 WL 872724, at *1 (N.D. Cal. Mar. 11, 2011) (listing factors for determining whether someone is an alter ego of another entity). A corporate officer is personally liable for a corporation's trademark infringement where he is "a moving, active[,] conscious force behind the corporation's infringement." See <u>Adobe Sys. Inc. v. Childers</u>, No. 10-3571, 2011 WL 566812, at *7 (N.D. Cal. Feb. 14, 2011).

**1.**   **Trademark Infringement Claim**

The essential elements of the infringement of trademark registration and false designation of origin claims are identical. <u>Brookfield Communications, Inc. v. West Coast Entertainment Corp.</u>, 174 F.3d 1036, 1047 (9th Cir.1999). Moreover, the 9th Circuit has consistently held that actions pursuant to California *Business & Professions Code* §17200 are "substantially congruent" to claims made under the Lanham Act. <u>Philip Morris v. Shalabi</u>, 352 F.Supp.2d 1067, 1072

1   (C.D.Cal.2004).   Therefore, analyzing the merits of the infringement claims is

2   sufficient because the standard of infringement, i.e., the likelihood of confusion, is

3   essentially implicated in the remaining federal and state causes of action. M2

4   Software, Inc. v. Madacy Entertainment Corp., 421 F.3d 1073, 080 (9th Cir.2005).

5        To prove a claim of trademark infringement under Section 32(1) of the

6   Lanham Act, a plaintiff must show that: (a) it owns the trademark at issue, (b) the

7   defendant has used in commerce, without authorization, a copy, reproduction,

8   counterfeit or colorable imitation of the plaintiff's mark in connection with the

9   sale, distribution, or advertising of goods and services, and (c) the defendant's use

10  of the mark is likely to cause confusion or to cause mistake or to deceive. 15

11  U.S.C. §1114(1).   In its Complaint, Plaintiff alleges all facts necessary to prove

12  trademark infringement, along with false designation of origin and unfair business

13  practices, by Defendants.

14        a.        Plaintiff's ownership of trademarks at issue

15  First, Plaintiff adequately alleges its ownership of Plaintiff's Trademarks at

16  issue. Garibyan Decl. ¶2., Exs. A-D thereto; Compl. at ¶¶19-21, Exs. A-F, thereto.

17  A federal registration of a mark constitutes prima facie evidence of its validity and

18  of plaintiff's exclusive rights to the mark. Brookfield Communications, 174 F.3d

19  at 1047.

20        b.        Defendant's use of Plaintiff's trademarks in commerce

21  Second, the "use in commerce" requirement is satisfied as to Defendants.

22  Plaintiff alleges that Defendants sold counterfeit products bearing Plaintiff's

23  Trademarks on eBay, and that Defendants used images confusingly similar or

24  identical to Plaintiff's Trademarks without consent or authorization to sell the

25  counterfeit products. Compl. at ¶¶24-44; Garibyan Decl. at ¶¶2-12, Exs. A-O,

26  thereto. Indeed, a trap purchase of the infringing product was made from and

27  received from Defendants.   Moreover, the infringing product was received in a

28  package with a return address identifying PRUS, individually, as the sender.

### c.     Likelihood of confusion

The third element of trademark infringement is the likelihood of confusion, or whether the similarity of the marks is likely to confuse customers about the source of the products. E & J Gallo Winery v. Gallo Cattle, 967 F.2d 1280, 1290 (9th Cir.1992).

Likelihood of confusion is analyzed using an eight-factor test established by the Ninth Circuit, i.e.: (i) strength of the allegedly infringed mark; (ii) proximity or relatedness of goods; (iii) similarity of sight, sound, and meaning of marks; (iv) evidence of actual confusion; (v) degree to which marketing channels converge; (vi) type of goods and degree of care consumers are likely to exercise in purchasing goods; (vii) intent of the Defendant in selecting the allegedly infringing mark; and (viii) evidence of actual confusion and likelihood that the parties will expand their product lines. AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-349 (9th Cir. 1979).

Applying this test to Plaintiff's Trademarks and Defendants' infringement thereof by selling counterfeit products bearing Plaintiff's Trademarks should lead this Court to conclude that Plaintiff has successfully pled a likelihood of confusion. Garibyan Decl. ¶11, Ex. O, thereto.

### i.     Strength of the allegedly infringed mark

The strength of Plaintiff's Trademarks is adequately alleged in Plaintiff's pleadings and weighs in favor of a likelihood of confusion. The strength of a mark is based on the distinctiveness of the mark and whether it has acquired secondary meaning, i.e., whether it has come to be associated with a good or service. Gallo Cattle, 967 F.2d at 1291. "A strong mark is inherently distinctive, for example, an arbitrary or fanciful mark; it will be afforded the widest ambit of protection from infringing uses." Sleekcraft, 599 F.2d at 340. A fanciful mark is an invented mark or neologism not found within any dictionary. Brookfield Communications, 147 F. 3d at 1059, n. 19.  Indeed, fanciful marks have no meaning prior to their adoption

1    and association with a particular good. Id.

2         Aside for the association with the product at issue, the word "OtterBox" and

3    the pictographic marks stemming therefrom, neither having connote anything of

4    meaning, in any language.    Accordingly, Plaintiff's OTTERBOX® and

5    DEFENDER SERIES® marks should be considered incontestably strong.

6         The length of time that Plaintiff has used its mark in the marketplace further

7    establishes the strength of the mark.  Plaintiff alleges in its Complaint that it has

8    been using the OTTERBOX® trademarks since as early as 2007. Garibyan Decl.

9    ¶2, Exs. A-D thereto; Compl. At ¶19-21, Exs. A-F, thereto.  Plaintiff's products

10   have achieved an extraordinary reputation and have garnered extensive coverage

11   by the media in reports about consumer electronics products. Compl. At ¶16.

12   Plaintiff has been recognized with various awards both locally and nationally. To

13   name a few, Plaintiff was selected as "The Best Mobile Case Brand" 2011 from

14   About.com Reader's Choice; "Must Have gear for the fall and winter" by National

15   Geographic "Gear of the Year" 2010 for Plaintiff's Defender® Series of products;

16   and Better Business Bureau "Torch Award for Business Ethics" – Plaintiff was

17   recognized for outstanding commitment to practices that benefit their customers,

18   suppliers, shareholders, employees and the surrounding community, honored in

19   April 2010. Compl. At ¶17.

20        Plaintiff's substantial investment of time, money, and effort in developing

21   consumer recognition and awareness of its products has garnered extensive media

22   coverage in reports about consumer electronic products. Compl. At ¶18.  Plaintiff

23   has spent an enormous amount of money on print and internet advertising in order

24   to inform consumers of the benefits of Plaintiff's products. Through the extensive

25   use of the Plaintiff's Trademarks, Plaintiff has built up and developed significant

26   goodwill in its entire product line. Compl. At ¶18.

27        Thus, the status of this mark as fanciful, coupled with the duration of its use

28   in the marketplace, establish that it is a strong mark, making consumer confusion

more likely. <u>Joujou Designs, Inc. v. Jojo Ligne Internationale</u>, 821 F.Supp. 1347, 1353-1354 (N.D.Cal.1992).

### ii. **Proximity or relatedness of goods**

The second factor, the proximity or relatedness of products bearing Plaintiff's Trademarks, and Defendants' counterfeit versions thereof, also points toward a likelihood of confusion. The more related or complementary goods are, the higher the danger of consumer confusion. <u>Gallo Cattle</u>, 967 F.2d at 1291.

Here, the infringed marks and infringing marks appear on identical goods – form fit protective cases for cellular phones. More specifically, both products bear Plaintiff's Trademarks. Garibyan Decl. at ¶11, Ex. O, thereto.

### iii. **Similarity of sight, sound, and meaning of marks**

The third factor, similarity of sight, sound, and meaning of the marks also supports a finding of likelihood of confusion. Where, as here, the products bearing the disputed marks are identical, even less similarity is required to demonstrate a likelihood of confusion. <u>Sleekcraft</u>, 599 F.2d at 350.

Given this low standard, Plaintiff has easily and adequately demonstrated that the marks are similar as they are identical. Marks should be compared based on their sight, sound, and meaning as they appear in the marketplace, and similarities between marks should be weighed more heavily than differences. <u>Id</u>.

Plaintiff has submitted photographs of the counterfeit products bearing Plaintiff's Trademarks purchased from Defendants. Garibyan Decl. at ¶10, Ex. E, thereto. Under the lower standard for marks used for identical products, Defendants' use of Plaintiff's Trademarks is identical in sight, sound, and meaning.

### iv. **Degree to which marketing channels converge**

In considering the marketing channels used by Plaintiff and Defendants, the channels largely overlap, which makes consumer confusion more likely. Defendants operate and maintain a storefront on the website known as

1   www.ebay.com (hereinafter "eBay") under the seller ID "mpdeals1." Compl. at

2   ¶25; Garibyan Decl., ¶6, Ex. F, thereto.  Through this eBay storefront, Defendants

3   regularly and systematically advertised, marketed, distributed, and sold products

4   bearing Plaintiff's Trademarks. Compl. at ¶25; Garibyan Decl., ¶6, Ex. F, thereto.

5       Moreover, according to Plaintiff's eBay specific service monitoring

6   software, Terapeak.com, which caches and tracks online commercial transactions

7   and listing by product and seller ID, Defendants have sold not less than 11,115

8   counterfeit "OtterBox" products from May 2011 through May 2012 taking in total

9   gross receipts of approximately $206,510.00. Garibyan Decl., ¶8, Exs. I-L, thereto.

10  Plaintiff sells its products at third-party retail stores such as Apple and AT&T, in

11  addition to its online website – www.otterbox.com. Garibyan Decl. ¶13.

12      Accordingly, Defendants' substantial quantity of counterfeit products

13  bearing Plaintiff's Trademarks sold on eBay, under the seller ID "mpdeals1"

14  undeniably show both parties are reaching the same type and market of potential

15  consumers.

16          **v.    Type of goods and degree of care consumers are**

17                  **likely to exercise in purchasing goods**

18      When goods are expensive, the buyer can be expected to exercise greater

19  care in his purchases; again, though, confusion may still be likely. Omega

20  Importing Corp. v. Petri-Kine Camera Co., 451 F.2d 1190, 1195 (9th Cir. 1971)

21  (warns against undue reliance on the "supposed sophistication" and care of

22  consumers when expensive goods are involved).

23      The goods in question are relatively inexpensive.  Thus, the presumption

24  that buyers of expensive products exercise greater care is not applicable here.

25          **vi.   Intent of the Defendant in selecting the allegedly**

26                  **infringing mark**

27      Though bad intent is not necessary to demonstrate a likelihood of confusion,

28  where the plaintiff establishes that defendant knowingly used an infringing mark,

1    there is a presumption that the infringer will accomplish his purpose, and the

2    public will be deceived. Sleekcraft, 599 F.2d at 354.

3         In this instance, it is undeniable Defendants are acting in bad faith and with

4    intent. Plaintiff has alleged and submitted compelling evidence to prove

5    Defendants were aware or should have known that the items being sold were in

6    fact counterfeit OTTEROX®-and DEFENDER SERIES®- branded merchandise

7    and that Defendants continued to sell counterfeit OTTEROX® and DEFENDER

8    SERIES® merchandise of inferior quality to consumers despite this awareness.

9    Compl. At ¶¶12-34; Garibyan Decl., ¶¶6-12, Exs. F-O, thereto.

10        Upon entry of default, the well-pleaded allegations of fact in the complaint

11   relating to a defendant's liability are taken as true. Pepsi Co., Inc. v. California

12   Security Cans, 238 F.Supp.2d 1172, 1176-77 (C.D. Cal. 2002) (citing TeleVideo

13   Systems, Inc. v. Heidenthal, 826 F.2d 915, 917–18 (9th Cir.1987)). And, the

14   failure of party to defend itself against allegations of trademark counterfeiting is

15   highly indicative of willful trademark infringement. Philip Morris USA, Inc. v.

16   Castworld Products, Inc., 219 F.R.D. 494, 500 (C.D. Cal. 2003) ("Given…the

17   likelihood that [defendant's] conduct would cause confusion or mistake or

18   otherwise deceive customers, and [defendant's] failure to comply with the judicial

19   process or to participate in any way in the present litigation, the Defendant has

20   engaged in willful use of the counterfeit mark, which justifies the imposition of a

21   substantial monetary award.").

22        Here, had Plaintiff had an opportunity to obtain discovery from Defendants

23   and/or issue subpoenas to eBay and PayPal, the true volume of Defendants'

24   counterfeit sales could have been verified. Moreover, Defendants' failure to

25   defend against Plaintiff's Complaint, which includes allegations of bad faith,

26   intent, and willful conduct, is indicative of Defendants' knowledge regarding the

27   source of his infringing products and the counterfeit nature of the products

28   Defendants sold.

### vii. <u>Evidence of actual confusion and likelihood that the parties will expand their product lines</u>

"Evidence that use of the two marks has already led to confusion is persuasive proof that future confusion is likely." <u>Sleekcraft</u>, 509 F. 2d *at* 352 (*citing* <u>Plough, Inc. v. Kreis Laboratories</u>, 314 F.2d 635, 639-640 (9th Cir. 1963) [erroneously cited in <u>Sleekcraft</u> as "<u>Plough, Inc. v. Kreis Laboratories</u>, 314 F.2d, 369]). "Proving actual confusion is difficult, however." <u>Sleekcraft</u>, 509 F. 2d *at* 352 (*citing* <u>G.D. Searle & Co. v. Chas. Pfizer & Co.</u>, 265 F.2d at 389). "Because of the difficulty in garnering such evidence, the failure to prove instances of actual confusion is not dispositive." <u>Sleekcraft</u>, 509 F. 2d *at* 352 (*citing* <u>Drexel Enterprises, Inc. v. Hermitage Cabinet Shop, Inc.</u>, 266 F.Supp. 532, 537 (N.D. Cal. 1967).

Consumers are being confused everyday by Internet auction site sellers such as Defendants. Counterfeit versions of products bearing Plaintiff's Trademarks, like those sold by Defendants, have flooded the market, misleading consumers to believe that the counterfeit versions being sold are, in fact, authentic when they clearly are not. As of September 19, 2012, Defendants' webpage on eBay, showed no less than 15 neutral and 3 negative feedbacks from various purchasers of Defendants' purported OtterBox® products, referencing unauthorized and/or counterfeit products sold by Defendants bearing Plaintiff's Trademarks. Garibyan Decl. ¶7, Exs. G-H thereto.

Plaintiff has no evidence with respect to whether Defendants will expand their product line to include other products manufactured and/or marketed by Plaintiff utilizing the OTTERBOX® marks and works.

### viii. <u>Conclusion</u>

Taking all the allegations of the Complaint as true, Plaintiff has adequately pled and demonstrated that its Trademarks would likely be confused with Defendants' use thereof on counterfeit versions of products bearing Plaintiff's

1  Trademarks.

2  **2.  Trademark Dilution Claim**

3  In order to prove federal trademark dilution, a plaintiff must show that: (a)
4  the mark at issue is famous, (b) the defendant is making a commercial use of the
5  mark in commerce, (c) the defendant's use began after the mark became famous,
6  and (d) the defendant's use of the mark dilutes the quality of the mark by
7  diminishing the capacity of the mark to identify and distinguish goods and
8  services. Panavision, Int'l v. Torppen, 141 F.3d 1316, 1324 (9th Cir.1998).

9  In deciding whether a mark is famous, the courts will look to the following
10 factors: the degree of inherent or acquired distinctiveness; the duration and extent
11 of use; the amount of advertising and publicity; the geographic extent of the
12 market; the channels of trade; the degree of recognition in trading areas; any use
13 of similar marks by third parties; and whether the mark is registered.  15 U.S.C.
14 §1125(c); see also Mead Data Central, Inc. v. Toyota Motor Sales, U.S.A., Inc.,
15 875 F.2d 1026 (2nd Cir.1989).

16 Once the prerequisites for a dilution claims are satisfied, the owner of a
17 mark can bring an action against any use of that mark that dilutes the distinctive
18 quality of that mark, either through "blurring" or "tarnishment."  Tarnishment
19 occurs when the mark is cast in an unflattering light, typically through its
20 association with inferior or unseemly products or services. Toys "R" Us v.
21 Akkaoui, 40 U.S.P.Q.2d (BNA) 1836 (N.D. Cal. 1996).

22 **a.  Plaintiff's ownership of famous marks**

23 Plaintiff is the owner of federally-registered and Common law trademarks.
24 Garibyan Decl. ¶2, Exs. A-D, thereto; Compl. at ¶19-21, Exs. A-F, thereto.
25 Additionally, Plaintiff is also an award-winning designer and maker of high-end,
26 high-quality peripherals and accessories for portable electronic devices and
27 computers. Compl. at ¶17.

28 Products bearing Plaintiff's Trademarks have become increasingly popular

1   and famous over the past few years, particularly in light of the company's

2   advertising as well as consumer word of mouth referrals given the effectiveness of

3   the products and the popularity. Compl. at ¶¶12-18.  Plaintiff has spent substantial

4   time, money and effort in developing consumer recognition and awareness of its

5   marks, copyrights and products. Id. Through the extensive use of the Plaintiff's

6   marks, Plaintiff has built up and developed significant goodwill in its entire line of

7   OTTERBOX®-branded products.  Id.

8       As a result of Plaintiff's efforts, the high degree of promotion, recognition,

9   and the quality and popularity of Plaintiff's Trademarks – these marks and

10  products have been prominently placed in the minds of the public.  Consumers,

11  purchasers and the members of the public have become familiar with the

12  Plaintiff's intellectual property and have come to recognize the Plaintiff's

13  Trademarks and products associate them exclusively with Plaintiff – and Plaintiff

14  has acquired a valuable reputation and goodwill among the public as a result of

15  such association.  Indeed, Plaintiff's Trademarks. Id.

16          **b.   Defendant's commercial use of Plaintiff's famous marks**

17      Defendants operate and maintain a storefront on eBay under the username

18  "mpdeals1." Compl. at ¶25; Garibyan Decl., ¶6, Ex. F, thereto.  Through this

19  webpage, Defendants regularly and systematically advertised, marketed,

20  distributed, and sold products bearing unauthorized Plaintiff's Trademarks.

21  Compl. at 24-34, Ex. G thereto; Garibyan Decl., ¶6-12, Exs. F-O, thereto.

22      On March 27, 2012, in its ongoing investigation of counterfeit sales of

23  OTTERBOX®-branded products, Plaintiff purchased a "NEW OTTERBOX

24  DEFENDER CASE FOR APPLE IPHONE 4 4G PINK/WHITE" (Item

25  #140713678582) from Defendants for $24.48, paid through Plaintiff's PayPal

26  electronic payment account. Plaintiff's PayPal purchase receipt for Item

27  #2140713678582 clearly show Defendants' name and eBay.com seller ID

28  "mpdeals1" as the seller. Compl. at ¶27, Ex. G, thereto; Garibyan Decl. ¶9, Ex. D,

1    thereto.  The "NEW OTTERBOX DEFENDER CASE FOR APPLE IPHONE 4

2    4G PINK/WHITE" (Item #140713678582) purchased from Defendants arrived via

3    USPS First Class Mail with the shipping label identifying PRUS on the return

4    address.  Garibyan Decl. ¶10, Ex. N, thereto.  The product purchased from

5    Defendants was inspected to determine authenticity.  The inspection of the

6    purchased item confirmed that the item Defendants sold to Plaintiff's investigator

7    was, in fact, a counterfeit and unauthorized "NEW OTTERBOX DEFENDER

8    CASE FOR APPLE IPHONE 4 4G PINK/WHITE."  Compl., ¶28; Garibyan Decl.,

9    ¶11-12, Ex. O, thereto.

10         Accordingly, Defendants' commercial use of Plaintiff's famous marks is

11   undisputable.

12              **c.    Defendant's use began after Plaintiff's marks were famous**

13         Plaintiff uses its trademarks on and in connection with its OTTERBOX®

14   and DEFENDER SERIES®- branded products, and has been using its trademarks

15   since as early as 2007.  Garibyan Decl. ¶2, Exs. A-D, thereto; Compl. at ¶19-21,

16   Exs. A-F thereto.

17         According to Plaintiff's eBay specific service monitoring software,

18   Terapeak.com, which caches and tracks online commercial transactions and listing

19   by product and seller ID, Defendants have sold not less than 11,115 counterfeit

20   "OtterBox" products from May 2011 through May 2012 taking in total gross

21   receipts of approximately $206,510.00.  Garibyan Decl., ¶8, Ex. I-L, thereto.

22   Therefore, it is undisputable that Defendant's use began much after Plaintiff's

23   marks were famous.

24              **d.    Defendant's use tarnishes the quality of Plaintiff's marks**

25         Defendants have tarnished Plaintiff's Trademarks by selling inferior quality

26   counterfeit electronic merchandise imitating Plaintiff's Trademarks.  Tarnishment

27   occurs when the mark is cast in an unflattering light, typically through its

28   association with inferior or unseemly products or services.  <u>Toys "R" Us v.</u>

1    <u>Akkaoui</u>, 40 U.S.P.Q.2d (BNA) 1836 (N.D. Cal. 1996).

2    Defendants have cast Plaintiff's marks in an unflattering light by offering

3    for sale, selling, and distributing counterfeit versions of products bearing

4    Plaintiff's Trademarks. Compl. at ¶¶22-34, 45-50; Garibyan Decl. at ¶6-12 Exs., F-

5    O, thereto.

6    **C.    <u>Sum of Money at Stake</u>**

7    Here, Plaintiff has alleged in its Complaint that Defendants engaged in

8    intentional, knowing, and willful acts of infringement of Plaintiff's Trademarks,

9    and intentionally and knowingly diluted said trademarks.  Specifically, Plaintiff

10   alleges that Defendants have intentionally infringed upon not less than four (4) of

11   Plaintiff's Trademarks.   Defendants have failed to respond to these serious

12   allegations despite notice thereof.  Moreover, Defendants' deliberate disregard of

13   Plaintiff's Complaint clearly display Defendants' bad faith, intent and willful

14   conduct. Garibyan Decl. ¶2-12, Exs. A-O, thereto.

15   The Court should therefore find that pursuant to the relevant sections of the

16   Lanham Act, and the facts established by Plaintiff for purposes of this motion, an

17   enhancement of electable statutory damages is warranted, in addition to attorneys'

18   fees and costs, thereby putting a total of no less than $8,000,000.00 of statutory

19   damages at stake.

20   **1.    <u>Statutory Damages for Trademark Infringement and Trademark</u>**

21   **<u>Dilution</u>**

22   The *Trademark Act* provides that in a case involving the use of a counterfeit

23   mark in connection with the sale, offering for sale, or distribution of goods and

24   services, or any willful violation under section 43(c) of the *Lanham Act* (15 *U.S.C.*

25   §1125(c)), the plaintiff may elect to recover statutory damages in the amount of

26   not less than $1,000.00 or more than $200,000.00 per counterfeit mark per type of

27   goods sold, offered for sale, or distributed. 15 *U.S.C.* §1117(c)(1).  In addition, if

28   the Court finds that the use of the counterfeit mark was willful, the plaintiff may

be granted an award of statutory damages of not more than $2,000,000.00 per counterfeit mark per type of goods sold, offered for sale, or distributed. 15 *U.S.C.* §1117(c)(2).

In this instance, Plaintiff has alleged that Defendants' use of four (4) separate and distinct trademarks was willful, an allegation that Defendants have failed to respond to, and Plaintiff has provided evidence to show that Defendants knew, or should have known, that the purported products Defendants were selling were, in fact, counterfeit.

Additionally, Plaintiff's evidence of actual sales would likely have been more substantial had Defendants responded to the Complaint considering Plaintiff's Terapeak.com results. Garibyan Decl., ¶8, Exs. I-L, thereto.  With the Court's authorization, Plaintiff would issue subpoenas to eBay and PayPal to obtain a full and complete accounting of all Defendants' counterfeit and unauthorized sales.  In light of the four (4) marks at issue *and* Defendants' complete disregard for Plaintiff's allegations, the Court could order statutory damages against Defendants in favor of Plaintiff in the amount of $8,000,000.00.

Based upon the Complaint and evidence included in support of this motion, Plaintiff seeks the statutory damages of $800,000.00, *only*, for trademark infringement and dilution against Defendants pursuant to 15 *U.S.C.* §1117(c)(1) for Defendants' intentional infringing use of each of Plaintiff's trademarks.

**D.   No Possibility of Dispute Concerning Material Facts**

There is no information before the Court concerning the possibility of dispute of material facts due to the fact Defendants have not appeared in this action.

**E.   Default Not Due to Excusable Neglect**

Defendants' default in this matter was not due to excusable neglect. Plaintiff filed its Complaint on May 14, 2012 against Defendants, and Defendants were served, with a copy of the Summons and Complaint on May 24, 2012

1  (Documents #8-9). Garibyan Decl. ¶14. Defendants are apprised of the allegations

2  against them and have ignored such notice. On June 8, 2012, Plaintiff and

3  Defendants filed a Stipulation Extending the Time to Answer the Complaint, and

4  the Court granted the Stipulation and extended Defendants' deadline to respond to

5  the Complaint to July 16, 2012. (Documents #10-11). Garibyan Decl. ¶15.

6  Plaintiff requested entry of default against Defendants on September 11, 2012,

7  and the clerk entered default of said Defendants on September 12, 2012.

8  Garibyan Decl. ¶16.

9  **F.**   **Policy Favoring Decisions on the Merits Does Not Outweigh Plaintiff's**

10     **Right to Relief**

11     Any policy in favor of deciding cases on the merits does not outweigh

12  Plaintiff's rights to relief in this matter.  Defendants had every opportunity to

13  defend this action, or otherwise responded to Plaintiff's Complaint, despite notice

14  thereof.  Favoring a policy of deciding cases on the merits in the case before this

15  Court would effectively condone and reward Defendants who refuse to appear,

16  causing Plaintiff further prejudice.  Moreover, Defendants' failure to defend this

17  matter has limited Plaintiff's access to evidence to support its claims against

18  Defendants.

19                    **IV.   REMEDIES**

20     Plaintiff is required to prove all damages sought in the Complaint. *Fed.R.*

21  *Civ.P.* 54(c); *see also* Philip Morris USA, Inc. v. Castworld Products, Inc., 219

22  F.R.D. 494, 498 (C.D. Cal. 2003).  In determining damages, a court can rely on

23  the declarations submitted by Plaintiff or order a full evidentiary hearing. *Fed.R.*

24  *Civ.P.* 55(b)(2).  Plaintiff's burden in "proving up" damages is relatively lenient.

25  Philip Morris, 219 F.R.D. at 498.

26     In this instance, Plaintiff seeks statutory damages, reasonable attorney's

27  fees, costs, and a permanent injunction for Defendants' willful infringement of

28  Plaintiff's Trademarks.

1    **A.      Statutory Damages**

2         Plaintiff seeks a statutory award of not less than $800,000.00 as

3    compensation for Plaintiff's damages, as a punishment for Defendants' willful

4    conduct, and as a deterrent to future infringement by Defendants and other pirates,

5    infringers and counterfeiters.

6         Under the *Lanham Act*, where a court finds that the use of a counterfeit

7    mark was willful, statutory damages "not more than $2,000,000 for counterfeit

8    mark per type of goods or services sold, offered for sale, or distributed, as the

9    court considers just" are available. 15 *U.S.C.* §1117(c).    While willful

10   infringement requires "knowledge that the defendant's conduct constitutes

11   trademark infringement," Peer Int'l Corp. v. Pausa Records, Inc., 909 F. 2d 1332,

12   n.3 (9th Cir. 1990), willfulness can be inferred from a defendant's failure to defend.

13   *See* Philip Morris USA, Inc. v. Castworld Products, Inc., 219 F.R.D. 494, 501

14   (C.D. 2003).   It should also be noted that "[c]ourts faced with determining

15   statutory damages under the [Lanham] Act have analogized to the body of case

16   law interpreting similar provisions in the Copyright Act." *See* Philip Morris, 219

17   F.R.D. at 501.

18         In determining whether the amount of statutory damages sought is

19   reasonable, courts will look to see if the amount is calculated to serve the purposes

20   of awarding statutory damages, including compensation for lost profits,

21   punishment of willful infringing conduct, and the deterrence of infringing activity.

22   Philip Morris, 219 F.R.D. at 501-502.   However, a plaintiff may elect statutory

23   damages for copyright infringement, and therefore, trademark infringement

24   "regardless of the adequacy of the evidence offered as to his actual damages and

25   the amount of defendant's profits." Columbia Pictures Television, Inc. v. Krypton

26   Broadcasting of Birmingham, Inc., F.3d 1186, 1194 (9th Cir. 2001).

27         Plaintiff's demand of $800,000.00 dollars is reasonably calculated to

28   accomplish the purposes of awarding statutory damages.   Plaintiff has set forth

1    adequate evidence, in both the Complaint and by way of declaration to establish

2    that Defendants' conduct was willful.   Defendants failed to comply with the

3    judicial process and have not in any way participated in the present litigation. This

4    allows for the inference that Defendants' conduct was in fact willful. Philip

5    Morris, 219 F.R.D. at 501 (holding that defendant willfully infringed plaintiff's

6    trademark based on plaintiff's allegations of willful infringement and defendant's

7    "failure to comply with the judicial process or to participate in any way in the

8    litigation").   Additionally, willfulness can be inferred from the declaration and

9    exhibits filed concurrently with this application for default judgment. Fed.R. Civ.P.

10   55(b)(2); see also Adobe System Inc. v. Brooks, 3 2009 WL 593343 (N.D. 2009)

11   (Unpublished).

12        Under the Lanham Act, the number of marks and works at issue would

13   allow for a maximum award of $8,000,000.00 dollars in statutory damages.

14   Nonetheless, Plaintiff only seeks an award of $800,000.00 despite Defendants'

15   continued disregard and intentional infringement of Plaintiff's intellectual

16   property rights.

17        With the imposition of this award, Plaintiff seeks to deter Defendants and

18   similarly situated counterfeiters, pirates and infringers from bringing into

19   commerce   counterfeit   products   bearing   Plaintiff's   Trademarks   and   from

20   exhibiting total disregard for the Federal Rules of Civil Procedure.   Plaintiff also

21   seeks compensation for damages (the total extent of which cannot be known as

22   Defendants have failed to participate in this litigation) caused by Defendants'

23   infringement and to punish Defendants appropriately for their extensive piratical

24   activities (the true extent of which is also unknown to Plaintiff as Defendants have

25   failed to meaningfully take part in this litigation).   Accordingly, $800,000.00 is

26   reasonably calculated to accomplish the purposes of providing statutory damages

27   under the Lanham Act.

28   / / /

**B.**   <u>Costs</u>

Pursuant to 15 U.S.C. §1117(a), Plaintiff is entitled to judgment against said Defendants for recovery of total costs Plaintiff has incurred in this action due to Defendants' violation of 15 U.S.C. §1125(a) and willful violation of 15 U.S.C. §1125(c) in the amount of $468.13.  Garibyan Decl. ¶19.

**C.**   <u>Attorneys' Fees</u>

Pursuant to 15 U.S.C. §1117(a), Plaintiff is entitled to judgment against Defendants for reasonable attorneys' fees incurred by Plaintiff in the prosecution of this action, due to the "exceptional circumstances" surrounding Defendants' willful violation of 15 U.S.C. §1125(c). <u>Lindy Pen Co. v. Bic Pen Corp.</u>, 982 F. 2d 1400, 1409 (9th Cir.1993) (stating that a case is "exceptional" when infringement is "malicious, fraudulent, deliberate, or willful."); *see also* <u>Taylor Made Golf Co., Inc., v. Carsten Sports Ltd.</u>, 175 F.R.D. 658 (holding that a case may be deemed "exceptional," and merit an award of attorney's fees under the *Lanham Act*, when Defendant disregards the proceedings and does not appear).

Pursuant to 15 U.S.C. §1117(b), Plaintiff is also entitled to judgment against Defendants for reasonable attorneys' fees due to Defendants' willful violation of 15 U.S.C. §1114(1)(a) (as provided for under 15 U.S.C. §1117(e)). Under Local Rule 55-3, attorneys' fees shall be calculated according to a fee schedule based upon the amount of the default judgment absent costs.  Pursuant to the Local Rules, Plaintiff is entitled to $5,600.00 in attorneys' fees. Garibyan Decl., ¶20.

**D.**   <u>Injunctive Relief</u>

The *Lanham Act* gives the Court "[p]ower to grant injunctions according to the rules of equity and upon such terms as the court may deem reasonable, to prevent the violation" of a mark holder's rights. 15 *U.S.C.* §1116(a); *see also* <u>PepsiCo Inc. v. Cal. Sec. Cans</u>, 238 F.Supp.2d 1172, 1177-78 (C.D. Cal. 2002). Accordingly, Plaintiff seeks an injunction covering three items listed below as

1   they relate to prevention of future infringing activity.

2          Plaintiff is entitled to a permanent injunction against Defendants and all of

3   his/her agents, officers, employees, representatives, successors, assigns, attorneys,

4   and all other persons acting for, with, by, through, or under authority from

5   Defendants, or in concert or participation with Defendants: (1) enjoining and

6   permanently restraining Defendants from manufacturing, advertising, distributing,

7   offering for sale, selling, whether directly or indirectly, counterfeit merchandise

8   bearing Plaintiff's Trademarks, including any merchandise of any kind bearing

9   Plaintiff's trademarks or names that are confusingly similar to the trademarks,

10  trade names, designs or logos of Plaintiff; (2) enjoining and permanently

11  restraining Defendants from using Plaintiff's marks or any copy, reproduction, or

12  colorable imitation, or confusingly similar simulation of Plaintiff's marks on or in

13  connection with the promotion, advertising, distribution, manufacture or sale of

14  Defendants' goods; (3) ordering Defendants to cancel, withdraw and recall all

15  his/her promotions, advertisements and merchandise bearing Plaintiff's marks or

16  any confusingly similar simulation to Plaintiff's marks, which have been

17  published, placed or shipped by Defendants or under Defendants' authority, to any

18  person, entity, or customer, including, without limitation, any publisher, agency,

19  wholesaler, distributor, retailer, consignor or marketer, and also deliver to each

20  publisher or customer a copy of this Court's order as it relates to said injunctive

21  relief against Defendants.

22  ///

23  ///

24  ///

25

26

27

28

## V.   CONCLUSION

For the foregoing reasons and in the manner set forth above, the Court should grant Plaintiff's Motion for Entry of Default Judgment by Court against Defendants for damages totaling no less than $806,068.13, along with the requested injunctive relief.

DATED: September 20, 2012

JOHNSON & PHAM, LLP

By: _____
    Ani S. Garibyan, Esq.
    Attorney for Plaintiff
    OTTER PRODUCTS, LLC

## PROOF OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is Johnson & Pham, LLP 6355 Topanga Canyon Blvd., Suite 326, Woodland Hills, CA 91367. On September 20, 2012, I served the within document(s):

**PLAINTIFF OTTER PRODUCTS, LLC'S NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS MPL DEALS, INC. AND MENACHEM PRUS**

☐   FACSIMILE - by transmitting via facsimile the document(s) listed above to the fax number(s) set forth on the attached Telecommunications Cover Page(s) on this date before 5:00 p.m.

☒   MAIL - by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below.

☐   PERSONAL SERVICE - by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☐   OVERNIGHT COURIER - by placing the document(s) listed above in a sealed envelope with shipping prepaid, and depositing in a collection box for next day delivery to the person(s) at the address(es) set forth below via UNITED PARCEL SERVICE.

**Eli Feit, Esq.**
**HELLER, HOROWITZ & FEIT, P.C.**
**292 Madison Avenue, 20th Floor**
**New York, NY 10017**

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on September 20, 2012, at Woodland Hills, California.

Edit Avakian